The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or substantively amend the Opinion and Award, with the exception of some minor changes to Conclusion of Law 5 and Award 1 with regard to the deduction issue.
* * * * * * * * * * *
Defendants' motion to dismiss plaintiff's cross-assignments of error and motion for attorney's fees are hereby DENIED.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. A Form 21 Agreement was approved in this matter by the Industrial Commission on 25 October 1993. The Form 21 Agreement constitutes an award of the Commission and as such is a part of the evidence of record.
2. The parties stipulated to the medical records of plaintiff relating to this claim, which were marked as Stipulated Exhibits 1, 2, and 3.
* * * * * * * * * * *
EVIDENTIARY RULING
All objections raised by counsel in the depositions are ruled upon in accordance with the applicable law and in accordance with the Opinion and Award in this case. Further, after careful consideration, the evidence adduced at trial as an offer of proof on behalf of the plaintiff in the cross-examination of Priscilla Flippen is hereby received as evidence in this matter.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is forty-four years old and began working for defendant-employer as a mechanic in 1986.
2. On 27 July 1993, plaintiff's average weekly wage was $813.99, yielding the maximum compensation rate for that year of $442.00.
3. On 27 July 1993, plaintiff was working on an airplane when he struck the top of his head on something on the wing. He staggered and "saw stars." He rested a few minutes and then returned to his work duties. About ten to fifteen minutes after the incident, he began to feel numbness on the left side of his face and in his left arm.
4. On the way home after work, plaintiff began to feel numbness in his left leg and began limping. That evening, he went to Forsyth Memorial Hospital Emergency Room for numbness, paresthesia and weakness involving the left arm and leg. He was admitted to the hospital for three days and discharged with a diagnosis of "[l]eft hemiparesis of uncertain cause, most probably representing multiple sclerosis."
5. Plaintiff's family physician, Dr. John Roach, saw plaintiff in the hospital on 30 July 1993 and wrote in his notes that plaintiff was "in the hospital on Dr. Brady's service with stroke. Has left-sided weakness."
6. Prior to each visit to a physician, a supervisor from defendant-employer signed a form authorizing the visit. Defendant-employer and the defendant-carrier had access to plaintiff's medical records relating to this matter.
7. On 20 September 1993, plaintiff was evaluated by Dr. J.M. McWhorter, a neurosurgeon. Dr. McWhorter's notes reflect that plaintiff told him that he hit his head on 27 July 1993 and began to have numbness on the left side of his body, and that he had had a stroke.
8. On 1 October 1993, the worker's compensation adjusting agent for defendants noted the following in her file:
 [claimant] was in accident while in cs of job. However, will need to determine DX [diagnosis] asap. The reason . . . [claimant] . . . is still OOW [out of work] may be . . . [due] . . . to a congenital defect not the accident.
9. On 4 October 1993, a medical case manager for defendants wrote to Dr. McWhorter asking him if he believed plaintiff's "CVA like symptoms are related to some pre-existing vascular or other medical condition in addition to his 7-27-93 injury." The case manager further asked Dr. McWhorter "to discuss the relationship of the patient's physical symptoms and his head injury on 7-27-93." On 5 October 1993, the same case manager wrote a letter to Dr. Roach asking him to give his opinion of the relationship between the patient's physical problems and his head injury of 27 July 1993. On 7 October 1993, the case manager again wrote Dr. McWhorter another letter inquiring about his opinion.
10. On 13 October 1993, defendants' adjusting agent mailed plaintiff a completed Form 21 Agreement for his signature and return.
11. On 14 October 1993, Dr. McWhorter wrote a letter responding to the case manager's questions stating that plaintiff "obviously did have a stroke on July 27, 1993," and that he did not believe that a pre-existing condition was responsible.
12. On 18 October 1993, defendants'' adjusting agent received the Form 21 Agreement signed by plaintiff. On or about 18 October 1993, defendants' adjusting agent agreed to and signed the Form 21 Agreement on behalf of defendants. On 25 October 1993, the agreement was approved by the Industrial Commission.
13. Plaintiff suffered a cerebral vascular accident involving his right hemisphere, i.e. a stroke, that happened a short time after hitting his head in the compensable accident of 27 July 1993.
14. As a result of the stroke, plaintiff was temporarily and totally disabled for the period from 28 July 1993 until 28 March 1994, when he returned to work for defendant-employer on light duty for four hours a day, five days a week. On 2 December 1994, defendant-employer ceased providing light duty work for plaintiff because they had concluded that plaintiff's condition was not work-related. Defendants paid plaintiff temporary total or partial disability compensation from 28 July 1993 until 16 December 1994. At that time, defendants ceased workers' compensation disability payments and began paying plaintiff by depleting his accumulated vacation pay, sick pay and holiday pay. When plaintiff's accumulated vacation, sick, and holiday pay was exhausted, on 17 March 1995, defendants resumed paying plaintiff temporary total disability payments at the maximum compensation rate. As a result of the stroke, plaintiff has been temporarily and totally disabled from 6 December 1994 through the time of the hearing before the Deputy Commissioner.
15. Defendants filed a Form 24 Motion and a Form 33 Request That Claim Be Assigned for Hearing requesting authorization to stop payment of compensation to plaintiff on the grounds that plaintiff's disability was caused by the stroke and that doctors cannot relate the stroke to plaintiff's 27 July 1993 accident. A special Form 24 hearing was not held; instead the matter was set for hearing before the Deputy Commissioner.
16. Prior to defendants' approval and submission of the Form 21 Agreement to the Industrial Commission on or about 18 October 1993, they were aware that plaintiff had suffered a stroke and that the etiology was undetermined. They nevertheless admitted liability for plaintiff's head injury.
17. Defendants have presented no evidence that the Form 21 Agreement was entered into due to fraud, misrepresentation, or undue influence. Defendants have failed to prove that the Form 21 Agreement was entered into because of any mistake of fact common to both plaintiff and defendants.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. An agreement between an employee and the employer and workers' compensation carrier for payment of compensation benefits is binding on the parties when approved by the Industrial Commission. Buchanan v. Mitchell County,38 N.C. App. 596, 248 S.E.2d 399 (1978).
2. With the information defendants had available at the time they entered into the Form 21 Agreement, the issue of whether plaintiff's stroke-related symptoms and disability is compensable was decided by the parties when they entered into the Form 21 Agreement. Mullinax v. Fieldcrest Cannon, Inc.,100 N.C. App. 248, 395 S.E.2d 160 (1990).
3. The parties' Form 21 Agreement was not entered into due to fraud, misrepresentation, undue influence or mutual mistake and should not be set aside. Mullinax v. Fieldcrest Cannon,Inc., supra.
4. As a result of the 27 July 1993 injury by accident and stroke, plaintiff was temporarily disabled and entitled to receive temporary total disability compensation at the rate of $442.00 per week for the period beginning 28 July 1993 until 27 March 1994, after which he returned to light-duty work. From 28 March 1994 until 16 December 1994 plaintiff was temporarily partially disabled and entitled to receive two-thirds of the difference between his pre-injury wages and the wages he earned on light duty. Thereafter, plaintiff was temporarily and totally disabled and entitled to continue receiving compensation at the rate of $442.00 per week. N.C.G.S. 97-29, 97-30.
5. From 16 December 1994 through 17 March 1995, defendants paid plaintiff by depleting his vacation, holiday, and sick leave. Notwithstanding these payments, plaintiff is furthermore entitled to compensation benefits pursuant to the Workers' Compensation Act and Conclusion of Law 4 above. If, however, defendants have reinstated plaintiff's previously accumulated vacation pay, sick pay, and holiday pay at the time this Opinion and Award is filed, then defendants are entitled to a deduction for the amount paid to plaintiff during the period his leave was depleted. If defendants have not, then they are not entitled to a deduction.
6. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. N.C.G.S. § 97-25; Hyler v. GTE Products Co.,333 N.C. 258, 425 S.E.2d 698 (1993).
* * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $442.00 per week for the temporary total disability he sustained as a result of this injury by accident, and continuing until the date plaintiff returns to work earning the same wages he earned before his injury or until defendants are authorized to terminate such payments by further order of the Industrial Commission. Defendants shall be entitled to a deduction for any amounts paid, but only in accordance with Conclusion of Law number 5 above. Otherwise, any amounts accrued shall be paid in a lump sum.
2. Defendants shall pay all medical compensation for treatment of the injury by accident giving rise to this claim for the remainder of plaintiff's life.
3. A reasonable attorney fee in the amount of twenty-five percent of any accrued compensation benefits due to plaintiff under the above award is hereby approved for plaintiff's counsel and shall be forwarded directly to the law firm of Walden and Walden. Furthermore, for the balance of reasonable attorney fees owed, defendants shall forward every fourth weekly compensation benefit due to plaintiff directly to Walden and Walden
4. Defendants shall bear the costs of this appeal.
This is the ____ day of May, 1997.
 S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER